**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW MEXICO**

**BETTY J. FLIPPEN,**

Plaintiff**,**

**v.**                                                            **No.:**

**LAS CRUCES SUN-NEWS, INC.,**
**MEDIANEWS GROUP, INC.,**
**TEXAS-NEW MEXICO NEWSPAPER**
**PARTNERSHIP, GANNETT TEXAS LP,**
**GANNETT CO., INC.,**

Defendants**.**

## COMPLAINT FOR CIVIL RIGHTS VIOLATIONS

1.  Plaintiff, Betty J. Flippen, through undersigned counsel, brings this action, pursuant to
    42 U.S.C. Section 1981, and the Civil Rights Act of 1991, seeking damages to remedy
    violations of her civil rights guaranteed by the Civil Rights Act of 1866, Title VII of the
    Civil Rights Act of 1964, the Age Discrimination in Employment Act of 1967, and the
    New Mexico Human Rights Act, as amended. Plaintiff Flippen also seeks damages for
    breach of contract, breach of the covenant of good faith and fair dealing, and for
    promissory estoppel pursuant to New Mexico common law.

## JURISDICTION AND VENUE

2.  Plaintiff Flippen is a resident of Las Cruces, New Mexico and a former employee of
    Defendants MediaNews Group, Gannett Texas LP and Gannett Co., Inc, Texas-

1

Newspaper Partnership and Las Cruces Sun-News in Las Cruces, New Mexico.

3.      The acts and effects complained of herein all occurred in New Mexico.

4.      Plaintiff's causes of action all arose in New Mexico.

5.      Defendant MediaNews Group (Defendant or MNG) is headquartered in Denver, Colorado and owns scores of newspapers in at least fourteen states across the U.S. Defendants MNG, Gannett Texas LP, Gannett Co., Inc, and Texas-Newspaper Partnership own Defendant Las Cruces Sun-News (Sun-News or Newspaper) which is a local paper based in Las Cruces, New Mexico.

6.      Defendants MNG, Gannett Co., Inc, and Texas-Newspaper Partnership employ in excess of 4000 workers each nationwide. Defendant Newspaper employs in excess of 70 workers in New Mexico.

7.      The court has subject matter (federal question and supplemental) jurisdiction pursuant to 28 U.S.C. Sections 1331 and 1367 (a).

8.      The court has personal jurisdiction over all necessary parties for the reasons stated above.

9.      Venue is proper in this district.


## ALLEGATIONS OF FACT

10.     Plaintiff Flippen is an affable, diminutive, African-American female in her late fifties. She is a grandmother of six children and a mother of three grown children. Plaintiff has been a Baptist preacher for several years.

11.     Defendants hired Plaintiff Flippen in 2005 as an accounting clerk in the Collections Department.

12.     In 2005 and 2006, Plaintiff Flippen was the only Black employee of Defendants not in a menial position.

13.     In December 2005, Defendants promoted Plaintiff Flippen to Accounting Manager of the Accounting Department because of her stellar work performance.

14.     As Accounting Manager of the Accounting Department, Plaintiff Flippen supervised eight employees and managed day-to-day operations (for example, cash transactions, accounts payable, accounts receivable, customer inquiries, etc.)

15.     During all the times relevant to his complaint, Plaintiff Flippen was the only Black manager at the Newspaper.

16.     In February 2006, Judy Luna, Defendants' Human Resources Manager (HR Manager or Luna), a Hispanic female, informed Plaintiff that one of her subordinates, Michael Peterson , a white male employee, had complained to the HR Department because Plaintiff Flippen had asked him if we would make a small monetary contribution towards the planned birthday celebration of a coworker.

17.     This "information" from the HR Manager, mentioned in Paragraph 15 constituted a verbal reprimand, apparently, because it would be used to "support" Plaintiff's subsequent firing.

18.     Defendants had no written policies or unwritten practice prohibiting the requesting of contributions for coworker birthday cards or celebrations.

19.     In April 2006, Michael Peterson resigned his position and provided a letter of resignation in which he blamed his Black supervisor for his leaving.

20.     On May 18, 2006 Plaintiff Flippen hired Victoria Estrada, a Hispanic female (the

Accuser) as a collections clerk.

21.    Plaintiff had a close supervisory relationship with the Accuser and provided training to her on the Newspaper's computer system in May and June 2006.

22.    During training sessions on May 25, 2006 and May 31, 2006, Plaintiff informed the Accuser that she need not take notes during the training because Plaintiff would provide "screen prints" of all procedures for her subsequent reference. Plaintiff gently placed her hands on those of the Accuser as she stated that she need not take notes. The Accuser did not request that the Plaintiff refrain from touching her hands or otherwise display any dissatisfaction with the method of training. The Accuser did not report these hand-touching incidents for more than three weeks.

23.    On June 14, 2006, the Accuser stated to Greg Keirns, Defendants' Chief Financial Officer (CFO or Keirns), a non-Hispanic white male, and then to the HR Manager that Plaintiff Flippen had slapped her writing-hand during training sessions and thereby caused "a hostile work environment" for her. The Accuser added that Plaintiff Flippen had threatened her saying "If you like your hand you will stop writing."

24.    On June 15, 2006, the Accuser stated to the HR Manager that Plaintiff Flippen had already begun to retaliate against her because she had complained that Plaintiff had slapped her writing-hand during training sessions and caused "a hostile work environment" for her.

25.    On June 15, 2006, the HR Manager informed the Accuser that retaliation by Plaintiff was impossible because Plaintiff had no knowledge yet of the Accuser's accusations. The Accuser became very agitated after receiving this

admonishment.

26.     Apparently, undaunted by being caught in a lie, the Accuser continued to complain to the HR Manager about Plaintiff's alleged creation of a "hostile work environment".

27.     The HR Manager failed to interview or inquire of any of the other six employees whom Plaintiff supervised regarding any possible "unwelcome" hand-tapping by the diminutive Plaintiff.

28.     The HR Manager failed to recognize or acknowledge the probability that the Accuser, who had already falsely accused Plaintiff Flippen of retaliation, might actually have been biased against Plaintiff because of her age, gender or race.

29.     On June 19, 2006, the HR Manager and CFO met with Plaintiff Flippen, and told her, for the first time, that a the Accuser had resigned after accusing Plaintiff of twice slapping her writing-hand during training sessions and admonishing her not to take any more notes "if she wanted to keep her writing hand."  Plaintiff was blind-sided by this information and completely incredulous.

30.     During the June 19, 2006 meeting, Plaintiff Flippen denied slapping anyone and demonstrated to the HR Manager and CFO how she had merely lightly touched the Accuser's hand in a friendly and reassuring manner during two training sessions. Plaintiff indicated that she had politely asked the Accuser, her subordinate, to concentrate on what she was being told and not to take notes. After the Accuser failed to cooperate with her request, Plaintiff stated that she reassured her that there was no need to take notes because the information would

be repeated and available later. Plaintiff Flippen denied threatening the Accuser by saying "If you like your hand you will stop writing."

31.    During the June 19, 2006 meeting, Plaintiff explained to the HR Manager and CFO that on May 25, 2006 the Accuser, undoubtedly insubordinate, had categorically refused to follow her directions regarding note-taking. Plaintiff Flippen further explained that only after being confronted with this perplexing non-cooperation had she ever-so lightly touched the Accuser's writing hand in a friendly manner the way one might do with an insecure and inattentive friend.

32.    During the June 19, 2006 meeting, Plaintiff informed the HR Manager and CFO how the second alleged touching "incident" on May 31, 2006 had followed essentially the same pattern. Plaintiff also provided additional information that showed that she and the Accuser had traveled together in the same car after the incidents in question and otherwise had an apparently good working relationship before and after each of the two training sessions in question.

33.    Plaintiff's statements during the June 19, 2006 meeting, and other evidence, contradicted the Accuser's contention that Plaintiff had intentionally and objectively physically battered, assaulted or otherwise intimidated her.

34.    Defendants stereotyped their black manager and failed to follow-up on Plaintiff's exculpatory statements or otherwise to properly consider the probability that the accusatory subordinate was disgruntled and discriminating against Plaintiff based on race, gender or age. Defendants also failed to consider the credible information Plaintiff Flippen provided and otherwise failed to conduct an independent or otherwise legally sufficient investigation.

35.     The CFO stated to Plaintiff Flippen that the Newspaper was firing her forthwith because she had violated the Newspaper's alleged zero-tolerance anti-violence policies by slapping the hands of her subordinate during training sessions. The CFO handed Plaintiff a pre-typed resignation letter for her immediate review and signature. Interestingly, the wording of the letter indicates that Defendants were fully aware of the possibility of discrimination against Plaintiff by her firing in that manner and under those circumstances.

36.     Defendants' offered Plaintiff Flippen absolutely no opportunity to consult with anyone about the accusations against her and her legal options.

37.     On June 19, 2006, Defendant Newspaper fired Plaintiff Flippen from her position of Account Manager right after informing her for the first time of the baseless charges against her and without adequately investigating the charges or following up on the information Plaintiff had provided.

38.     The rushed and indifferent manner of the HR Manager and CFO during the employment termination meeting on June 19, 2006, suggested to Plaintiff that she was not given adequate opportunity to defend herself because of her age, gender or race.

39.     Defendant Newspaper has never had any zero-tolerance "no-touching policy" either written or otherwise.

40.     Defendants' HR handbook makes no reference to incidental, non-offensive or casual physical contact between employees. Nor does Defendants' HR practice support their contention that they have a well-established "no physical contact of any kind, under any circumstances" policy.

41.     Defendants did not provide any training to Plaintiff regarding any alleged zero-tolerance "no touching" policy.

42.     Defendants never wrote up the Plaintiff or otherwise provided her the opportunity for progressive discipline for her alleged policy infraction.

43.     Defendants used the uncorroborated allegations of Plaintiff's biased subordinate to terminate their only Black, female manager over age forty, contrary to established HR practice and common sense, without fair warning, progressive discipline or even a verbal reprimand of any kind.

44.     Defendant Newspaper has a progressive discipline policy which it failed to follow when it peremptorily discharged Plaintiff following flimsy and suspect accusations of a disgruntled subordinate.

45.     Defendants' contention that Plaintiff physically threatened a subordinate and violated its HR policy is completely unsubstantiated, incredible and constitutes a pretext for illegal race, sex and age discrimination.

46.     Defendants illegally terminated Plaintiff because of her race, sex and age when it, within minutes of first informing her of the accusations against her, rubberstamped the biased accusations and terminated her without following up the credible testimony she provided, pursuant to the Cat's Paw Doctrine.

47.     Plaintiff has suffered severe emotional distress following termination from her position by Defendants illegal discrimination.

48.     In October 2006, Plaintiff filed a complaint of racial, gender and age discrimination with the Equal Employment Opportunity Commission (EEOC).

49.     In October 2007, the EEOC issued Plaintiff's right to sue notice.

50.     Defendants breached the implied contract of employment and implied covenant of fair dealing and good faith by terminating her employment based upon the contradictory, unsubstantiated, and biased statement of a subordinate and by otherwise failing to discipline her fairly relative to her coworkers, to evaluate her work performance based solely upon objective, work-related criteria or to employ progressive discipline for any perceived performance deficiencies or work policy violations.

51.     Defendants breached various legally enforceable promises to Plaintiff by terminating her employment based upon the contradictory, unsubstantiated, and biased statement s of a subordinate and by otherwise failing to discipline her fairly relative to her coworkers, to evaluate her work performance based solely upon non-discriminatory, objective, work-related criteria or to employ progressive discipline for any perceived performance deficiencies or work policy infractions.

52.     Defendants' discriminatory actions against Plaintiff Flippen were intentional, malicious, wanton, and obdurate and in gross and reckless disregard of Plaintiff Flippen's civil rights.

53.     Defendants acted knowingly to discriminate against Plaintiff Flippen on the basis of her age, race and sex.

54.     Defendants' actions proximately caused Plaintiff's damages and injuries including, but not limited to, damage to her professional reputation and her opportunities for obtaining other employment and professional advancement, and foreseeable emotional pain and suffering.

## COUNT I

## VIOLATIONS OF THE CIVIL RIGHTS ACT OF 1964
## (RACE)

55.     Plaintiff incorporates by reference each of the allegations set forth in the preceding paragraphs.

56.     Plaintiff is an African-American and Defendants discriminated against her because of her race.

57.     Defendants fired Plaintiff Flippen for an alleged violation of company policy without investigation or progressive discipline because of her race.

58.     Defendants fired Plaintiff Flippen because of the biased information of a racially motivated non-supervisory coworker on the alternative cat's paw theory of employment discrimination. Defendants failed to carry out a sufficiently independent investigation of the information provided by the biased Accuser.

59.     Defendants treated Plaintiff  less favorably as stated herein because of Plaintiff's race in violation of Title VII of the Civil Rights Act of 1964 (42 U.S.C. 2000) , the Civil Rights Act of 1991 (42 U.S.C. Sec. 2000e) and in violation of the New Mexico Human Rights Act.

60.     Defendants' actions were intentional, willful, wanton and malicious.

## COUNT II

### VIOLATIONS OF THE CIVIL RIGHTS ACT OF 1866
### (RACE)

61.   Plaintiff incorporates by reference each of the allegations set forth in the preceding paragraphs.

62.   Plaintiff is a Black-American of African origin and Defendants discriminated against her because of her race.

63.   Defendants fired Plaintiff Flippen for an alleged violation of company policy without investigation or progressive discipline because of her race.

64.   Defendants fired Plaintiff Flippen because of the biased information of a racially motivated non-supervisory coworker on the alternative cat's paw theory of employment discrimination. Defendants failed to carry out a sufficiently independent investigation of the information provided by the biased Accuser.

65.   Defendants treated Plaintiff  less favorably as stated herein because of Plaintiff's race in violation of the Civil Rights Act of 1866 (as re-enacted and amended at 42 U.S.C. Sec. 1981), the Civil Rights Act of 1991 (42 U.S.C. Sec. 2000e), and the New Mexico Human Rights Act.

66.   Defendants' actions were intentional, willful, wanton and malicious.

## COUNT III

### VIOLATIONS OF THE CIVIL RIGHTS ACT OF 1964

### (SEX)

67.   Plaintiff incorporates by reference each of the allegations set forth in the preceding paragraphs.

68.    Plaintiff is a female and Defendants discriminated against her because of her sex.

69.    Defendants fired Plaintiff Flippen for an alleged violation of company policy without investigation or progressive discipline because of her sex.

70.    Defendants fired Plaintiff Flippen because of the biased information of a gender-motivated non-supervisory coworker on the alternative cat's paw theory of employment discrimination. Defendants failed to carry out a sufficiently independent investigation of the information provided by the biased Accuser

71.    Defendants treated Plaintiff Flippen differently as stated herein because of her sex in violation of the Title VII of the Civil Rights Act of 1964 (42 U.S.C. 2000), as amended, the Civil Rights Act of 1991 (42 U.S.C. Sec. 2000e), as amended, and the New Mexico Human Rights Act.

72.    Defendants' actions were intentional, willful, wanton and malicious.


## COUNT IV

### VIOLATIONS OF THE AGE DISCRIMINATION IN EMPLOYMENT ACT OF 1967
### (AGE)

73.    Plaintiff incorporates by reference each of the allegations set forth in the preceding paragraphs.

74.    Plaintiff Flippen is almost 60 years old and Defendants discriminated against her as alleged herein because of her age in violation of the Age Discrimination in Employment Act of 1967 (29 U.S.C. Sec. 621-634) as amended, and the New Mexico Human Rights Act.

75.    Defendants' actions were intentional, willful, wanton and malicious.

## <u>COUNT V</u>

### BREACH OF IMPLIED CONTRACT

76.     Plaintiff incorporates by reference each of the allegations set forth in the preceding paragraphs.

77.     Plaintiff Flippen was an excellent employee who was recently promoted and who had a blemish-free employment record before Defendants illegally discharged her on June 19, 2006.

78.     Defendants made an implied agreement with Plaintiff that she would be disciplined fairly relative to her coworkers and that her work performance would be evaluated based solely upon non-discriminatory, objective, work-related criteria.

79.     Defendants' representations, promises, and conduct were sufficient to induce reasonable expectations on the behalf of Plaintiff that she would be disciplined fairly pursuant to company policies, relative to her coworkers and that her work performance would be evaluated based solely upon the aforementioned non-discriminatory, objective, work-related criteria.

80.     Despite the implied contract Defendants failed to discipline Plaintiff Flippen fairly pursuant to company policies and relative to her coworkers or to evaluate her work-performance based solely upon non-discriminatory, objective, work-related criteria.

81.     Defendants' actions in breach of the implied contract were intentional, willful, wanton and malicious.

## COUNT VI

## BREACH OF IMPLIED COVENANT OF GOOD FAITH
## AND FAIR DEALING

82.   Plaintiff incorporates by reference each of the allegations set forth in the preceding
       paragraphs.

83.   Plaintiff Flippen was an excellent employee who was recently promoted and who
       had a blemish-free employment record before Defendants illegally discharged her
       on June 19, 2006.

84.   Pursuant to New Mexico law, the implied contract referred to above included an
       implied covenant of good faith and fair dealing.

85.   Defendants' actions, as complained of herein, were undertaken in bad faith with
       complete and deliberate disregard for the contractual rights of Plaintiff Flippen in
       violation of the covenant of good faith and fair dealing.

86.   Defendants wrongfully and intentionally breached the implied agreement and
       covenant to the detriment of Plaintiff.

87.   Defendant's actions injured Plaintiff's rights to receive the benefits of the implied
       agreement.

88.   Defendants' actions were intentional, willful, wanton and malicious.

## COUNT VII

## PROMISSORY ESTOPPEL

89.   Plaintiff incorporates by reference each of the allegations set forth in the preceding

paragraphs.

90.     Plaintiff Flippen was an excellent employee who was recently promoted and who had a blemish-free employment record before Defendants illegally discharged her on June 19, 2006.

91.     Defendants made promises to Plaintiff that she would be disciplined fairly pursuant to company policies, relative to her coworkers and that her work performance would be evaluated based solely upon the aforementioned non-discriminatory, objective, work-related criteria which promises Defendants should have reasonably expected to induce action on the part of Plaintiff.

92.     Plaintiff's reliance on the promises of Defendants was reasonable.

93.     Defendants are bound by the promise they made to Plaintiff Flippen.

94.     Defendants' actions in violation of the aforementioned promises were intentional, willful, wanton and malicious.

## RELIEF REQUESTED

**WHEREFORE,** Plaintiff prays for judgment as follows:

A.     Compensatory and punitive damages.

B.     Pre-judgment and post-judgment interest, as allowed by law.

C.     Reasonable costs and attorneys fees incurred in bringing this action.

D.     Such other relief as the Court deems just and proper.

## JURY TRIAL DEMANDED

Plaintiff hereby demands a trial by jury on all counts and issues so triable.

Respectfully submitted this 16th day of December 2007,

LAW OFFICES OF
# PAUL M. GAYLE-SMITH

By:_____/S/ _____
Paul M. Gayle-Smith
2961 Sundance Circle
Las Cruces, New Mexico 88011-4609
GayleSmithEsq@aol.com

Attorney for Plaintiff