**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF NEW MEXICO**

**BETTY J. FLIPPEN,**

> **Plaintiff,**

**vs.**                                                    **07 CV 1267 JP/CEG**

**LAS CRUCES SUN-NEWS, INC. and**
**TEXAS-NEW MEXICO NEWSPAPER PARTNERSHIP,**

> **Defendants.**

**MEMORANDUM OPINION AND ORDER**

On May 11, 2009, Defendants Las Cruces Sun-News, Inc. ("LCSNI") and Texas-New

Mexico Newspaper Partnership ("TNMNP") filed Defendants' Motion for Summary Judgment

(Doc. No. 49) (the "Motion") and Memorandum in Support (Doc. No. 52) requesting summary

judgment on all counts of Plaintiff's complaint.  On June 23, 2009, Plaintiff Betty J. Flippen

("Plaintiff") filed Plaintiff's First Amended Response (Doc. No. 58). On July 30, 2009,

Defendants filed Defendants' Reply to Plaintiff's Amended Response (Doc. No. 68).[1] In

addition, Plaintiff filed a Supplement to the record containing additional pages from a deposition

that were omitted from her First Amended Response (Doc. No. 74).  On September 29, 2009, the

Court held a hearing on the Motion, and at the hearing Paul M. Gayle-Smith represented the

Plaintiff and Rosemary M. Marin represented the Defendants.

---

[1] Both the Response (Doc. No. 58) and the Reply (Doc. No. 68) were timely filed under
the Court's Order (Doc. No. 65).

I.  Factual Background.

The following are factual allegations supported by evidence.[2]

A.  General.

Plaintiff is an African-American woman who was over 50 years of age when she was hired by LCSNI as a collections clerk.  In December 2005, LCSNI promoted Plaintiff from collections clerk to Accounting Manager, and in that position Plaintiff supervised eight to eleven employees. On June 19, 2006, Plaintiff was discharged from that position.  A Hispanic male in his 30's was hired as Account Manager a short time after Plaintiff's discharge.  Plaintiff asserts that she was discharged from her position as a manager by the LCSNI on the basis of her race, gender and/or age.

B.  Events Leading Up to Plaintiff's Discharge.

On May 18, 2006, Plaintiff, acting under her authority as Accounting Manager, hired Victoria Estrada, a Hispanic female over age 50, as a collections clerk. On May 25 and 31, 2006, Plaintiff trained Ms. Estrada to use certain computer applications required for her job.  During the first training session, Ms. Estrada attempted to take handwritten notes. Plaintiff instructed Ms. Estrada not to take notes stating that she wanted Ms. Estrada to focus on the computer screen. (Flippen Dep. 79:1-3.)  Plaintiff told Ms. Estrada that she would print out the screen images for Ms. Estrada if necessary. (Flippen Dep. 78:15-18.)  Ms. Estrada, however, continued to take handwritten notes. Plaintiff then "touched" Ms. Estrada's writing hand and reiterated the request that she concentrate on the computer screen and not take notes. (Flippen Dep. 78:7-18.)

_____

[2] When ruling on summary judgment, the evidence supporting these facts and the inferences from those facts will be viewed in the light favorable to Plaintiff.  *Asbury v. Geren*, 582 F. Supp. 2d 1323, 1327 (D.N.M. 2008) (citing *Simms v. Oklahoma ex rel. Dep't of Mental Health & Substance Abuse Serv.*, 165 F.3d 1321, 1326 (10th Cir.1999)).

During the second training session, Ms. Estrada attempted to take notes, and Plaintiff reiterated her request not to take notes while touching Ms. Estrada's hand. (*Id.*)

On June 14, 2006, a few days after Greg Keirns became Chief Financial Officer of LCSNI and Plaintiff's supervisor, Ms. Estrada complained to Mr. Keirns that during both training sessions Plaintiff had slapped her hand and that during the second training session Plaintiff threatened her by saying, "[i]f you like your hand, you'll stop writing." (Estrada Dep.11:10-22; Mot. Ex. E.)

Later on June 14, 2006, Mr. Keirns informed Human Resources manager Judy Luna of Ms. Estrada's allegations and asked Ms. Luna to conduct an investigation. Ms. Luna spoke with Ms. Estrada and two employees in Plaintiff's department. After speaking with the two employees, Ms. Luna concluded that neither had witnessed the incidents. (Luna Dep. 23:8 – 24:17.) Mr. Keirns spoke to several employees and reported to Ms. Luna that "there were no witnesses." (Luna Dep. 27:2-4.) Mr. Keirns and Ms. Luna reported their findings to LCSNI's publisher, David McClain. (Luna Dep. 28:1-5.)

On June 19, 2006, Ms. Estrada submitted a letter of resignation, which stated the following:

> Ms. Flippen created a truly hostile work environment as I was trying to learn the duties required for this position. Not only did she not allow note taking, she went so far as to slap my hand twice (May 25, 2006 and May 31, 2006). On May 31, she accompanied the slap with a not so subtle threat: "If you like your hand, you will stop writing." It has been difficult to work in such a hostile environment.

(Mot. Ex. E.) Ms. Estrada later filed a complaint against LCSNI with the New Mexico Department of Labor Solutions alleging that Plaintiff's conduct created a hostile work environment at LCSNI.

On June 19, 2006, Ms. Luna and Mr. Keirns met with Plaintiff, told her about Ms.

3

Estrada's complaint and resignation, and showed her Ms. Estrada's letter of resignation. Plaintiff denied slapping and threatening Ms. Estrada.  Plaintiff stated that when Ms. Estrada continued to take notes after being asked not to, Plaintiff lightly touched Ms. Estrada's writing hand in a business like non-offensive manner and reiterated her request to stop writing. (Flippen Aff. ¶¶ 4-7).

During the June 19th meeting, Plaintiff demonstrated on Ms. Luna's hand how she had touched Ms. Estrada. (Flippen Dep. 82:2-5.)[3]  Ms. Luna advised Plaintiff that Plaintiff's "touch" felt like a "slap," that the "touch" caused her hand to burn, and that she found the "touch" offensive. (Luna Dep. 50:5-20; 57:14-24.)  After the demonstration, Mr. Keirns discharged Plaintiff because she had violated the newspaper's anti-violence policies.  Mr. Keirns handed Plaintiff a previously prepared memorandum, addressed to Plaintiff, for her review and signature. (Mot. Ex. F.)  The memorandum given to Plaintiff stated, "Las Cruces Sun-News is committed to provide employees with a safe and comfortable work environment[,]" and LCSNI "would not tolerate any form of violence, threats of violence, intimidation of other[s], coercion, or attempts to instill fear" in co-workers.  (Mot. Ex. F.)

C.  The Meeting With the NAACP Legal Redress Committee.

In July 2006, Plaintiff, Ms. Luna, Mr. Keirns, and another representative of LCSNI, attended a meeting with the Legal Redress Committee (the "LRC") of the local chapter of the NAACP, which included LRC members, David Lyons and Doris Hamilton.  During the meeting, Ms. Luna stated that Plaintiff was terminated because she had behaved violently and that **two** employees had resigned because of [Plaintiff's] management style. (Lyons Aff. ¶ 8; Hamilton

---

[3] Plaintiff testified, "I demonstrated to [Ms. Luna] how I touched [Ms. Estrada's] hand, and I did not verbally threaten [Ms. Estrada]."  (Flippen Dep. 82:3-5.)

Aff. ¶ 11.) (emphasis added).  However, when questioned by members of the NAACP LRC, Ms. Luna admitted that the other employee, Michael Peterson, "had resigned only because he blamed Plaintiff for having asked him to make a small contribution to a fund to purchase a birthday card for one of his co-workers." (*Id.*)  Nevertheless, at the July 2006 meeting,  ". . . [Ms.] Luna still insisted that Mr. Peterson's resignation was one of the reasons for the termination of [Plaintiff]." (*Id.*)  Ms. Luna also stated that Plaintiff was fired for violating Defendants' "no touching" policy; however, Ms. Luna could not identify a specific "no touching" policy in the handbook. (Lyons Aff. ¶ 10; Hamilton Aff. ¶ 10.)

       D.   Provisions of the Employee Handbook.

The LCSNI Employee Handbook prohibits "offensive touching" in its section on sexual harassment. (Mot. Ex. B at p. 21.) The handbook provides other examples of behavior that could result in disciplinary action or dismissal of an employee: "[f]ighting, intimidation or harassment in any form (physical, oral or written) or use of abusive language on company time . . ."  (Mot. Ex. B at p. 42.)  The handbook states that Defendants "will not tolerate any form of violence, threats of violence, intimidation of others, coercion, or attempts to instill fear in co-workers . . ." (Mot. Ex. B at p. 44.) Defendants' discipline policy includes "verbal warning, suspension without pay, or dismissal." (Mot. Ex. B.)  The handbook does not specifically state that Defendants had a "no touching" policy.

II.  Plaintiff's Legal Claims.

In October 2006, Plaintiff filed a complaint of racial, gender and age discrimination with the Equal Employment Opportunity Commission ("EEOC").  In October 2007, the EEOC gave Plaintiff a right to sue notice.  On December 17, 2007, this suit was filed.

In Counts I and II of her complaint, Plaintiff alleges that Defendants discharged her

because of her race in violation of 42 U.S.C. § 1981, the Civil Rights Act of 1991, the Civil Rights Act of 1866, Title VII of the Civil Rights Act of 1964, and the New Mexico Human Rights Act ("NMHRA").  In Count III, Plaintiff alleges that Defendants discharged her because of her gender in violation of Title VII of the Civil Rights Act of 1964, the Civil Rights Act of 1991, and the NMHRA.  In Count IV, Plaintiff alleges that she was discharged because of her age in violation of the Age Discrimination in Employment Act (ADEA) (29 U.S.C. § 621 et. seq) and the NMHRA.  In Counts V and VI, Plaintiff alleges under New Mexico law that Defendants breached an implied employment contract and the implied covenant of good faith and fair dealing when they failed to discipline Plaintiff fairly under Defendants' company policies. In Count VII, Plaintiff asserts a claim under the doctrine of promissory estoppel alleging that Defendants made a promise to Plaintiff that she would be disciplined fairly, that Plaintiff relied on that promise, and that Defendants' actions breached the promise. The Court granted summary judgment dismissing Counts V – VII at the pre-trial hearing held on September 29, 2009.  Thus, only Counts I – IV will be discussed in this Memorandum Opinion.

III.  <u>Summary Judgment Standard.</u>

Summary judgment is appropriate "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56 ©. The movant bears the initial burden to show the absence of a genuine issue of material fact entitling the movant to judgment as a matter of law. *Libertarian Party of NM v. Herrera*, 506 F.3d 1303, 1309 (10th Cir. 2007) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)).  If the movant meets this initial burden, the burden then shifts to the nonmovant to "set out specific facts showing a genuine issue for trial." Fed. R. Civ. P. 56(e)(2). To accomplish this, the nonmovant

must submit or reference affidavits, deposition transcripts, or specific exhibits. *Libertarian Party*, 506 F.3d at 1309 (citing *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 671 (10th Cir.1998)).  In addressing the Motion, the court must "view the evidence and draw reasonable inferences therefrom in the light most favorable to the nonmoving party." *Asbury,* 582 F. Supp. 2d at 1327 (quoting *Simms,* 165 F.3d at 1326). The court must determine "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Gamez v. Country Cottage Care & Rehab.*, 377 F. Supp. 2d 1103, 1115 (D.N.M. 2005) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986)).

IV. Counts I and II: Racial Discrimination.

    A.  Prima Facie Case

Title VII prohibits an employer from terminating any individual because of "race, color, religion, sex, or national origin," 42 U.S.C. § 2000e-2(a)(1).  Section 1981 of title 42 states, "[a]ll persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts, . . . as is enjoyed by white citizens, . . ." 42 U.S.C. § 1981. Section 1981 is available for suits involving intentional employment discrimination. *Durham v. Xerox Corp.*, 18 F.3d 836, 839 (10th Cir.1994).

The NMHRA states,

"[i]t is an unlawful discriminatory practice for:

>   A. an employer, . . . to discharge, . . . any person otherwise qualified because of
>   race, age, religion, color, national origin, ancestry, sex, physical or mental
>   handicap or serious medical condition, . . .;  provided, however, that 29 U.S.C.
>   Section 631(c)(1) and (2) shall apply to discrimination based on age[.]

NMSA § 28-1-7(A). In discrimination lawsuits, the allocation of burdens of proof under Title

VII, § 1981 and the NMHRA are the same.  *Durham*, 18 F.3d at 839; *Orr v. City of Albuquerque*,

417 F.3d 1144, 1148-49 (10th Cir. 2005); *Cates v. Regents of the N.M. Inst. of Mining & Tech.,*

954 P.2d 65, 69-70 (N.M. 1998).

Plaintiff has presented no direct evidence of racial discrimination; therefore, the Court

will apply the burden shifting framework of *McDonnell Douglas*.[4]  Under the *McDonnell*

*Douglas* framework, a plaintiff asserting that he was fired on the basis of race bears the initial

burden of establishing a prima facie case. *Id.* at 802. Once the prima facie case is established, the

burden shifts to the employer to articulate a legitimate, nondiscriminatory reason for the

employment action. *Id.* If the employer articulates a legitimate, non-discriminatory reason for its

employment action, the Plaintiff must present evidence that the reason proffered was a pretext

for discrimination. *Id.*; *Perry v. Woodward*, 199 F.3d 1126, 1135 (10th Cir. 1999).

To present a prima facie case of discriminatory termination on the basis of race, a

plaintiff must present evidence of the following: (1) that plaintiff belongs to a protected class;

(2) that plaintiff was qualified for and was satisfactorily performing her job; (3) that despite

plaintiff's qualifications, she was discharged; and (4) that plaintiff was discharged "under

circumstances which give rise to an inference of unlawful discrimination." *See Swackhammer v.*

---

[4]  *McDonnell Douglas v. Green*, 411 U.S. 792 (1973).

*Sprint/United Management Co.*, 493 F.3d 1160, 1166 (10th Cir. 2007) (noting that a fourth

element of the prima facie case used in some Title VII cases, that the employee's position was

not eliminated, is irrelevant in discriminatory discharge cases in which the employer does not

state elimination of the position as the reason for the discharge) (citing *Kendrick v. Penske*

*Transp. Servs., Inc.*, 220 F.3d 1220, 1229 (10th Cir. 2000) and *Perry*, 199 F.3d at 1138)).  As

discussed in *Perry*,

> When viewed against the backdrop of historical workplace discrimination, an employee
> who belongs to a racial minority and who eliminates the two most common, legitimate
> reasons for termination, i.e., lack of qualification or the elimination of the job, has at least
> raised an inference that the termination was based on a consideration of impermissible
> factors. The firing of a qualified minority employee raises the inference of discrimination
> because it is facially illogical to randomly fire an otherwise qualified employee and
> thereby incur the considerable expense and loss of productivity associated with hiring
> and training a replacement.

*Perry*, 199 F.3d at 1140.

In the Motion, Defendants assert that the fourth element of the prima facie case for race

discrimination requires a showing of disparate treatment among similarly situated employees.

Plaintiff counters that she is not required to prove a "negative," i.e. that other employees who

were not African American were treated differently than she was. The prima facie case outlined

above correctly states the elements that a plaintiff must present in order to establish a prima facie

case of race discrimination when a plaintiff is discharged, and it is not necessary that a plaintiff

present evidence of dissimilar treatment of non-minority employees. *See Kendrick*, 220 F.3d at

1229 (holding that district court erred when it required as part of the prima facie case that

plaintiff show that the employer treated similarly-situated non-minority employees differently).

The Court concludes that since Plaintiff was qualified for her job and her job was not eliminated,

Plaintiff has met the burden of establishing a prima facie case: She is an African-American

woman, who was qualified for her job; she was discharged, and she was discharged under circumstances that raise an inference of unlawful discrimination.  *Id.*[5]

    B.  <u>Legitimate Business Reason for Plaintiff's Discharge.</u>

Since Plaintiff has established a prima facie case of race discrimination, the burden shifts to the Defendants to give a legitimate, nondiscriminatory reason for Plaintiff's discharge. Defendants argue that Plaintiff was discharged because Defendants believed that Plaintiff had violated Defendants' policy on workplace violence because Ms. Estrada reported that Plaintiff had slapped her hand and had threatened her. This constitutes a legitimate, nondiscriminatory reason for Defendants' termination of Plaintiff's employment and is sufficient to continue on to the last step of the *McDonnell Douglas* test.  At this point, the presumption of discrimination created by Plaintiff's prima facie case "simply drops out of the picture." *Swackhammer*, 493 F.3d at 1167. Now, Plaintiff carries the full the burden of persuasion to show that Defendants discriminated on the basis of race. *Id.*  Plaintiff can meet her burden by showing that Defendants' reason for discharging her was a pretext for racial discrimination. *Id.*

    C.  <u>Pretext.</u>

For Plaintiff to show that Defendants' proffered race-neutral reason was actually a pretext for discrimination, Plaintiff must demonstrate that the reason "w[as] so incoherent, weak, inconsistent, or contradictory that a rational factfinder could conclude the reason[] w[as] unworthy of belief." *Young v. Dillon Companies, Inc.*, 468 F.3d 1243, 1250 (10th Cir. 2006).   In appropriate circumstances, a trier of fact can reasonably infer from the falsity of the explanation

---

[5] Defendants do not argue that Plaintiff failed to establish the first three elements of the prima facie case; therefore, the Court assumes without deciding, that Plaintiff was satisfactorily performing her job.

that the employer is "dissembling to cover up a discriminatory purpose." *Id.* (citing *Reeves v.*
*Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 147 (2000)).  And, "a plaintiff's prima facie
case combined with *sufficient evidence* of falsity, *may permit* a trier of fact to conclude that the
employer discriminated." *Young*, 468 F.3d at 1250 (emphasis in original). The nature and
quantum of proof is key because evidence about the falsity of an employer's proffered reason
will not *always* be adequate to sustain liability." *Id.* (emphasis in original).  The factfinder must
be able to conclude, based on a preponderance of the evidence, that *discrimination was the*
*determinative factor* in the employer's actions – simply disbelieving the employer is
insufficient." *Id.* (emphasis in original). The relevant inquiry as to the proffered reasons "is not
whether the employer's proffered reasons were wise, fair or correct, but whether it honestly
believed those reasons and acted in good faith upon those beliefs." *Rivera v. City and County of*
*Denver,* 365 F.3d 912, 924-25 (10th Cir.2004) (quotation and alterations omitted).  "Evidence of
pretext may . . . take a variety of . . . forms," but "defeats summary judgment only if it could
reasonably lead the trier of fact to infer a discriminatory motive." *Swackhammer*, 493 F.3d at
1168.

       1.  Ms. Estrada's Complaint.

     Defendants contend that Ms. Luna and Mr. Keirns based their decision to discharge
Plaintiff on the following undisputed facts: 1) Ms. Estrada claimed that Plaintiff slapped her
hand twice; 2) Ms. Estrada claimed that Plaintiff threatened her; 3) Ms. Estrada resigned because
she considered Plaintiff's conduct to have created a hostile work environment; 4) Plaintiff
admitted that she touched Ms. Estrada but denied "slapping" her; 5) Plaintiff denied threatening
Ms. Estrada; and 6) Plaintiff demonstrated the "touch" on Ms. Luna's hand, which Ms. Luna
found offensive.  Defendants argue that Plaintiff's evidence of pretext does not sufficiently raise

a triable fact issue as to Ms. Luna's and Mr. Keirn's honest belief, based on the above facts, that Plaintiff acted inappropriately toward Ms. Estrada and that this behavior justified terminating Plaintiff's employment.

Plaintiff argues that Defendants could not have reasonably believed Ms. Estrada's complaint that Plaintiff slapped and threatened her over Plaintiffs' explanation that she lightly touched Ms. Estrada and did not threaten her.  Plaintiff further argues that Defendants unreasonably overreacted to Ms. Estrada's complaint and resignation by discharging Plaintiff, who had an unblemished employment record and who had been promoted to a managerial position.  Plaintiff argues that Defendants must have been covering up for discrimination because it defies reason that Defendants would fire a manager with an excellent record because of a complaint by a brand new employee.  Plaintiff further argues that Ms. Luna and Mr. Keirns could not have honestly believed Ms. Estrada because Ms. Estrada gave them reason to doubt her  credibility.  Ms. Luna testified at her deposition that a short time after Ms. Estrada made her complaint, Ms. Estrada came to Ms. Luna and stated that Plaintiff was retaliating against her because of her complaint. Ms. Luna testified that she told Ms. Estrada that Plaintiff could not have been retaliating against her because Ms. Luna had not yet told Plaintiff about Ms. Estrada's complaint. (Luna Dep. 131:12-23.)  Although this episode somewhat undermines Ms. Estrada's perception of events or credibility, it is insufficient to show pretext by Ms. Luna and Mr. Keirn. Plaintiff correctly characterizes this case as one involving one person's (her) word against another's (Ms. Estrada's). However, Plaintiff incorrectly asserts that her credible denial of events should raise a fact issue on pretext and prevent summary judgment.

The evidence shows that the decision makers believed that Plaintiff had touched Ms. Estrada, that Ms. Estrada found the touch offensive, and that Ms. Estrada resigned as a result.

Moreover, the evidence shows that when Defendants discharged Plaintiff they also believed that Plaintiff's demonstration at the June 19, 2006 meeting confirmed Ms. Estrada's complaint. Significantly, Ms. Luna's perception that the demonstrated touch was offensive has not been shown to be unworthy of belief.  However, even if Ms. Luna's perception was incorrect and the demonstrated touch was not offensive, as Plaintiff maintains, Plaintiff has failed to present evidence from which a factfinder could infer that Ms. Luna's conclusion was a pretext for discrimination.  What Ms. Luna should have concluded about the demonstrated touch is irrelevant to a finding of pretext. *See Swackhammer*, 493 F.3d at 1170 (stating "it is not what [decision maker] should have known that matters, but whether he acted in good faith upon the beliefs he held.").  And, Plaintiff's denial of Ms. Estrada's accusation and Ms. Estrada's mistaken belief that Plaintiff retaliated against her do not render the stated reasons so weak, inconsistent or dubious that a factfinder could conclude that Defendants were covering up for racial discrimination.  *See Kendrick*, 220 F.3d at 1232 (upholding summary judgment in favor of employer who discharged plaintiff-employee based on a report that plaintiff pushed and verbally abused a fellow employee and agreeing with the district court that plaintiff's denial that he had any physical contact with the employee was insufficient to raise a fact issue on pretext).[6]

---

[6] Plaintiff also argues that after she was discharged, Defendants informed Ms. Estrada that Plaintiff had been discharged and offered to reinstate Ms. Estrada as a collections clerk, but Ms. Estrada did not accept the offer.  Plaintiff asserts that this casts doubt on whether Ms. Estrada truly resigned because of Plaintiff's actions or for some other reason unrelated to Plaintiff. However, the Court must view the facts that were available to the decision makers at the time of Plaintiff's discharge, and Ms. Estrada's subsequent refusal to return to her previous position was not known at the time Plaintiff was discharged and cannot support a finding of pretext. *Kendrick*, 220 F.3d at 1231.

13

2. <u>The Investigation.</u>

Plaintiff next asserts that the investigation into the complaint was a sham and supports a finding of pretext because it yielded no corroboration of Ms. Estrada's complaint. Ms. Luna testified that after talking to several employees, both she and Mr. Keirns concluded that no one had witnessed the events.  However, Plaintiff presents no evidence as to how other investigations into employee misconduct were performed, or whether there is a policy, written or otherwise, requiring corroboration of an employee's misconduct by an eye witness other than the complainant. The employee handbook broadly states that "[a]n investigation appropriate to the circumstances will be conducted." (Mot. Ex. B at p. 44.) Ms. Luna testified that LCSNI never had terminated an employee for similar behavior. (Luna Dep. 86:1 – 88:13.)  But, Plaintiff provides no evidence that any other employee had ever been accused of similar conduct. Moreover, Plaintiff offers no evidence that an employee was accused of any type of inappropriate behavior and yet was not discharged.  Ms. Luna testified that in the 20 years she had been employed at LCSNI, she never encountered an accusation "as serious" as the accusation made by Ms. Estrada. (Luna Dep. 94: 3-6.)  More importantly, the fact that the investigation yielded no witnesses to the interactions between Plaintiff and Ms. Estrada that were the basis of Ms. Estrada's complaint does not support a finding that the investigation

14

was a sham or a cover up for discrimination. [7]

### 3. Plaintiff's Demonstration at the June 19, 2006 Meeting.

Plaintiff further argues that after she demonstrated the touch at the June 19th meeting,
Defendants could not have honestly concluded that the touch was offensive, violent or
intimidating.  The Court must look at the facts as they appeared to the decision makers at the
time of the adverse employment decision. *Kendrick*, 220 F.3d at 1231. The record reveals that
Ms. Luna, one of the decision makers, thought that the demonstrated touch could be considered a
slap and a violation of the company's anti-violence policy, and there is no evidence that shows
that the decision makers did not honestly believe that Plaintiff violated the policy.  Thus, Ms.
Luna's reaction to the demonstration is not evidence of pretext.

### 4. Immediate Termination of Employment.

Plaintiff argues that her immediate discharge shows pretext because Ms. Estrada's

---

[7] The Court notes that Plaintiff has argued that Defendants' proffered reason for
discharging Plaintiff was pretextual under the "cat's paw" or "rubber stamp" doctrines. To
recover under these doctrines, Plaintiff must show "that the decision maker followed the biased
recommendation [of a subordinate] without independently investigating the complaint against
the employee." *EEOC v. BCI Coca-Cola Bottling Co.*, 450 F.3d 476, 485 (10th Cir. 2006).  To
survive summary judgment on a subordinate bias theory, Plaintiff must first present evidence
concerning the bias of the subordinate, Ms. Estrada.  Plaintiff has presented no evidence that Ms.
Estrada was racially biased. Next, Plaintiff must establish a causal relationship between the
subordinate's actions and the employment decision." *Id.* at 488.  However, "an employer can
avoid liability by conducting an independent investigation of the allegations against an
employee." *Id.* Plaintiff has also failed to show the direct causal connection between Ms.
Estrada's complaint and the decision to discharge her because Defendants conducted an
investigation into the complaint, and Defendants heard Plaintiff's "side of the story" before
discharging her.  *See id.* (stating that under Tenth Circuit precedent, "simply asking an employee
for his version of events may defeat the inference that an employment decision was racially
discriminatory.").  It is not disputed that Ms. Luna and Mr. Keirns conducted an investigation,
and Plaintiff presented her "side of the story" at the June 19, 2006 meeting. Thus, Plaintiff's
assertion that Defendants' relied on a racially biased employee's complaint of misbehavior is not
supported by any evidence.

complaint warranted at most disciplinary action.  Defendants' employee handbook states the

following:

> If discipline is deemed appropriate, disciplinary action may include any or all of the
> following actions in any sequence (depending upon the totality of the circumstances):
> verbal warning, written warning, suspension without pay, and/or dismissal.  In some
> instances, immediate dismissal may be appropriate. . . . We deal with behavior problems
> on an individual basis.  A staff member's previous work history may be taken into
> account in determining disciplinary action to be taken.

(Mot. Ex. B at p. 48.)  Under this policy, Defendants are not required to progressively discipline

an employee before discharge, and the policy specifically provides for immediate dismissal

where appropriate. The immediate discharge, although the most severe punishment under the

policy, does not constitute evidence of pretext.

### 5.   The July 2006 Meeting With Members of the NAACP.

Plaintiff asserts that at the meeting in July 2006 with the NAACP LRC, Ms. Luna

proffered an unreasonable and arguably false reason for firing Plaintiff.  Two members of the

NAACP's LRC, Mr. Lyons and Ms. Hamilton, testified by affidavit that at the meeting, Ms.

Luna stated that Plaintiff was terminated because she had behaved violently and that "**two**

employees had resigned because of [Plaintiff's] management style." (Lyons Aff. ¶ 8; Hamilton

Aff. ¶ 11.) (emphasis added).  However, when questioned further, Ms. Luna admitted that the

other employee, Michael Peterson, "had resigned **only** because he blamed Plaintiff for having

asked him to make a small contribution to a fund to purchase a birthday card for one of his co-

workers." (*Id.*) (emphasis added).  Nevertheless, at the July 2006 meeting,  ". . . [Ms.] Luna still

insisted that Mr. Peterson's resignation was one of the reasons for the termination of [Plaintiff]."

(*Id.*)  Plaintiff asserts that after this action was filed, Defendants abandoned this reason for

Plaintiff's discharge.  Plaintiff argues that Ms. Luna's insistence that Mr. Peterson's resignation

was a reason for Plaintiff's discharge and Defendants' lack of assertion of the same reason in court filings is evidence of pretext because it shows that Defendants are advancing inconsistent reasons for Plaintiff's discharge.

Defendants argue that under Fed. R. Civ. P. 56(e) the Court should disregard the affidavit testimony of Mr. Lyons and Ms. Hamilton because the statements constitute inadmissible evidence.  Rule 56(e) states in relevant part the following:

(e) Affidavits; Further Testimony.

> (1) In General. A supporting or opposing affidavit must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant is competent to testify on the matters stated.

Fed. R. Civ. P. 56(e). Defendants argue that the statements in the affidavits are inadmissible because they are irrelevant, conclusory, not based on personal knowledge, and hearsay.  To the contrary, the statements by Ms. Luna at the meeting are relevant because they provide evidence of the reason for Plaintiff's discharge. Fed. R. Evid. 401, 402. Also, the affiants statements are not conclusory and they are based on personal knowledge of what Ms. Luna said at a meeting attended by both affiants.  One of the statements, however, contains hearsay and is inadmissible. The statement by Ms. Luna that Mr. Peterson "blamed" Plaintiff for asking for a monetary contribution involves a statement by Mr. Peterson offered to show the truth of that statement, which was presumably communicated to Ms. Luna.  But, two of the statements are not hearsay because they are proffered to prove what Ms. Luna said at the meeting and are admissions by a

party opponent. Fed. R. Evid. 801(d)(2).[8]  *See Vesom v. Atchison Hosp. Ass'n.*, 279 Fed. Appx.

624, 634 (10th Cir. 2008) (finding that affidavit statements by two doctors were admissible as

admissions by the defendant hospital).

The meeting with the NAACP yielded admissible evidence that Ms. Luna claimed that

another employee, Mr. Peterson, resigned because of Plaintiff's management style.  However,

the fact that after this case was filed, Defendants did not assert this reason as justification for

discharging Plaintiff does not add to a showing of pretext in any significant way.  No evidence is

presented showing that at the time Plaintiff was discharged, the decision to discharge was based

on the resignation of Mr. Peterson.  Instead, the evidence shows that the sole purpose of the June

19, 2006 meeting and subsequent termination of Plaintiff's employment was Ms. Estrada's

complaint and resignation.[9]

Plaintiff further argues that at the July 2006 meeting, Ms. Luna incorrectly stated that

---

[8] The first statement is as follows: "During the meeting, Judy Luna repeatedly stated that they had terminated [Plaintiff] because she had behaved violently and that two employees had resigned because of [Plaintiff's] management style." (Lyons Aff. ¶ 8; Hamilton Aff. 11.) The second statement is as follows: "Nevertheless, Luna still insisted that Mr. Peterson's resignation was one of the reasons for the termination of [Plaintiff]." (*Id.*) These statements are admissible for the purpose of showing that Ms. Luna made the statement at the meeting and to show what Ms. Luna believed was the basis for Plaintiff's discharge.

[9] When answering questions about the reason that the memorandum regarding Ms. Estrada was prepared in advance of the June 19, 2006 meeting, Ms. Luna testified as follows:
> David McClain made it very clear that we have documentation prepared if in the event [Plaintiff] admitted that the claim was true, that he wanted us to be prepared for that event, and he also said, If it is not true, we are not to administer any documents.

(Luna Dep. 95:2-6.)
Ms. Luna continued as follows:
> Q. . . . So, if [Plaintiff] had denied that any of it had occurred, what would have happened?
> . . .
> A.  She would still be employed.

(Luna Dep. 230:19-24.)

Plaintiff was fired for violating Defendants' "no touching" policy; however, Ms. Luna could not identify language in the handbook outlining a "no touching" policy. Plaintiff maintains that Ms. Luna's assertion is evidence of pretext. However, in the memorandum given to Plaintiff at the June 19, 2006 meeting, Defendants cite the policy on violence and do not claim to have a "no touching" policy. And, it is the Court's duty to examine the Defendants' statements and actions at the time of discharge for signs of pretext. *Young*, 468 F.3d at 1250 (the relevant "falsity" inquiry is whether the employer's stated reasons were held in good faith at the time of the discharge). In sum, although Ms. Luna's incorrect assertion that Defendants had a no touching policy supports a finding that she was mistaken, her statement does not support a finding that at the time Plaintiff was discharged, Defendants created or used such a policy as a cover up for discrimination.

> D. Insufficiency of evidence, as a whole, to raise a fact issue on pretext.

Plaintiff argues that all of the circumstances taken together are sufficient to show that there is a genuine issue of material fact on pretext. To meet her burden to produce evidence of pretext, Plaintiff must present evidence from which a factfinder could infer that Defendants made the decision to fire Plaintiff based on **her race** rather than their stated reasons. On this record, no reasonable jury could find that Defendants' asserted reason for terminating Plaintiff was a cover up for racial discrimination. Plaintiff must cast sufficient doubt on whether Defendants honestly believed their reason and in good faith decided to discharge Plaintiff. *Riggs v. AirTran Airways, Inc.*, 497 F.3d 1108, 1118-1119 (10th Cir. 2007) (stating that determining pretext requires a factfinder to focus on whether the employer honestly believed its reasons and acted in good faith upon them). "Even a mistaken belief can be a legitimate, non-pretextual reason for an employment decision." *Id.* (citation omitted). Moreover, the Court does not

second-guess an employer's decision even if it seems in hindsight that the action taken constituted poor business judgment. *Id.* "[The court's] role is to prevent intentional discriminatory hiring practices, not to act as a 'super personnel department,' second guessing employers' honestly held (even if erroneous) business judgments." *Id.* (citation omitted).

Plaintiff's evidence that she touched but did not slap Ms. Estrada, that Ms. Luna and Mr. Keirns believed Ms. Estrada after an investigation that yielded no eye witnesses to the events, that Defendants overreacted to the events with immediate discharge, and that Ms. Luna mistakenly provided an additional reason for the discharge at the NAACP meeting, at most supports a finding that Defendants might have been mistaken about some facts when they discharged Plaintiff or that Defendants made a poor business decision. But, the evidence of record does not raise an inference that Defendants were covering up for racial discrimination.

The Tenth Circuit opinion in *Young v. Dillon Companies, Inc.*, 468 F.3d 1243 (10th Cir. 2006) is instructive. Mr. Young, an African American, was fired for leaving work early and for reporting his time at work incorrectly. He was accused of "seeking to obtain pay for work he never performed." *Id.* at 1250-51. Mr. Young presented his time card from that day, showing that the decision maker may have been wrong when he concluded that Mr. Young left work early. The court noted that the time card, produced during discovery in the case, was not available to the decision maker before he fired Mr. Young, but the decision maker had a video showing Mr. Young walking out of his place of employment and not returning on that day. Mr. Young explained that on the day at issue, he had worked outside the building for the rest of his shift. In its analysis, however, the court concluded that even if the decision maker's belief that plaintiff left work early was wrong, the evidence did not show that the belief was held in bad faith and thus, no pretext of racial discrimination was shown. *Id.* at 1251.

20

In this case Plaintiff presents no evidence suggesting that Ms. Luna and Mr. Keirns believed in bad faith that Plaintiff inappropriately touched and threatened Ms. Estrada. And, even if Ms. Luna and Mr. Keirns wrongly assessed the facts before them, their reason for firing Plaintiff must be shown to have been a pretext for discrimination, and not just a mistake. *Riggs,* 497 F.3d at 1118-1119. Because Plaintiff has failed to raise a genuine issue of material fact that Defendants' reasons for firing her were a pretext for racial discrimination, the Court will grant summary judgment dismissing Counts I and II.

V.  Count III: Gender Discrimination.

A.  Prima Facie Case and Legitimate Reason for Discharge.

A plaintiff must present evidence of the following elements to establish a prima facie case of discharge on the basis of gender: (1) plaintiff belongs to a protected class; (2) plaintiff was qualified for her job; (3) despite plaintiff's qualifications, she was discharged; and (4) the adverse employment action occurred 'under circumstances which give rise to an inference of unlawful discrimination. *Plotke v. White,* 405 F.3d 1092, 1100 (10th Cir. 2008). The Court finds that just as Plaintiff has established a prima facie case for race discrimination, she has established a prima facie case of gender discrimination, and Defendants have presented a valid nondiscriminatory reason for Plaintiff's discharge.

B.  Pretext.

As with the showing of pretext in connection with her race discrimination claim, Plaintiff has failed to present evidence that the reason for her discharge was a pretext for gender discrimination. Plaintiff presented no evidence of gender-based comments or disparate treatment. *Plotke,* 405 F.3d at 1107. Plaintiff has not shown any procedural irregularities or post hoc fabrication of the reason for her termination. *Id.* at 1104. Even if Ms. Luna and Mr.

Keirns improperly believed Ms. Estrada's version of events and unreasonably determined that the touch demonstrated on Ms. Luna was offensive, the record contains no evidence from which the Court can infer that they held this belief in bad faith. And, even if the Court accepts Plaintiff's argument that her termination was a bad decision, nothing of record allows the Court to infer that instead of simply being wrong, the decision was a cover for gender discrimination. Plaintiff essentially argues that gender must have played a part in the decision to fire her because it is implausible that she would be discharged under these circumstances. But, this argument asks the Court to find pretext based on mere conjecture. Plaintiff cannot survive summary judgment by demonstrating that the "true facts" associated with a termination differ from what Mr. Keirns and Ms. Luna honestly believed to be the case. Rather, Plaintiff must present evidence to undermine Defendants' credibility to the point that a reasonable jury could conclude "that it was not an honestly held belief but rather was subterfuge for discrimination." *Young,* 468 F.3d at 1250 (citing *Rivera*, 365 F.3d at 924-25). Since there is no evidence of pretext related to Plaintiff's gender, the Court will grant Defendants' Motion as to Plaintiff's Count III claim.

VI.  Count IV: Age Discrimination.

    A.  The Effect of *Gross v. FBL Financial Services, Inc.*

    In *Gross v. FBL Financial Services, Inc.*, 129 S.Ct. 2343 (June 18, 2009), the United States Supreme Court concluded that a plaintiff must prove by a preponderance of the evidence that age was the "but for" cause of an adverse employment action in order to meet plaintiff's burden of persuasion in an age discrimination suit. *Id.* at 2348. The precise question presented in *Gross* was "whether a plaintiff must present direct evidence of age discrimination in order to obtain a mixed-motives jury instruction in a suit brought under the . . . ADEA[]." *Id.* at 2346. However, the Court stated that before it could answer the question it "must first determine

22

whether the burden of persuasion ever shifts to the party defending an alleged mixed-motives discrimination claim brought under the ADEA." *Id.* at 2348. The Court held that it does not, stating that "[t]his Court has never held that [the *Price Waterhouse* ] burden-shifting framework applies to ADEA claims." *Id.* at 2348-49.  *Price Waterhouse* involved Title VII claims. *See id.* at 2351; *Price Waterhouse v. Hopkins*, 490 U.S. 228, 246 & n. 11 (1989). The Court, in *Gross*, further held that "the burden of persuasion necessary to establish employer liability is the same in alleged mixed-motives cases as in any other ADEA disparate-treatment action . . . [--a] plaintiff must prove by a preponderance of the evidence (which may be direct or circumstantial ), that age was the 'but-for' cause of the challenged employer decision." *Gross*, 129 S.Ct. at 2351.  Notably, the Court stated that it has not "definitively decided whether" the *McDonnell Douglas* framework applies in ADEA cases. *Id.* at 2349 n. 2.  District courts in this and other circuits have been  trying to discern the implications of *Gross* and in particular, this statement, in the context of summary judgment motions in ADEA cases.

For example, the District Court in Colorado concluded that ". . . nothing in Justice Thomas' opinion [in *Gross*] . . . alter[s] the widespread use of the *McDonnell Douglas* framework to decide whether summary judgment is appropriate in ADEA cases." *Fuller v. Seagate Technology, LLC*, 2009 WL 2568557, at *8 n.9 (D. Colo. Aug. 19, 2009).(citing *Misner v. Potter,* 2009 WL 1872598, *2 n. 2 (D. Utah June 26, 2009)). In *Fuller*, however, the court granted the defendant's motion for summary judgment because the court concluded that no reasonable jury could find that the plaintiff's termination would not have occurred **but for** defendant's desire to discriminate. *Id.* at * 14 (". . . this Court interprets *Gross* as elevating the quantum of causation required under the ADEA.") (emphasis added).  In *Misner v. Potter,* 2009 WL 1872598 (D. Utah June 26, 2009), the U.S. District Court in Utah cited *Gross* as providing a

23

heightened burden of persuasion for plaintiffs at trial, but applied the *McDonnell Douglas* analysis to cross motions for summary judgment without reference to the standard announced in *Gross*. *Id.* at ** 3-11.

Unlike the court in *Fuller*, the majority of the lower courts have concluded that *Gross* requires but for causation at trial but not at the summary judgment stage. *See generally, Ferruggia v. Sharp Electronics Corp.*2009 WL 2634925, *2 (D.N.J. Aug 25, 2009) (stating that the majority of courts that have addressed this issue post-*Gross,* continue to apply the *McDonnell Douglas* framework at the summary judgment stage while also recognizing that at trial the plaintiff bears the burden of persuasion to prove that discrimination was the but for cause of the adverse employment action). The Court agrees with this approach and will not import a heightened causation standard sidestepping the *McDonnell Douglas* analysis. *Gross*, therefore, "does not alter the *McDonnell Douglas* framework applied by courts at the summary judgment phase." *Simmons v. Sykes Enterprises, Inc.*, 2009 WL 4015962, at *4 n. 5 (D. Colo. Nov. 18, 2009).

B. Analysis under *McDonnell Douglas*.

The ADEA prohibits an employer from "failing or refusing to hire or to discharge any individual or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age." 29 U.S.C. § 623(a)(1).  A plaintiff whose employment was terminated establishes a prima facie case of age discrimination when he shows that (1) he is member of a protected group; (2) he was qualified for the position; (3) his employment was terminated; and (4) he was replaced by a younger person. *See Miller v. Eby Realty*, 396 F.3d 1105, 1111 (10th Cir. 2005); *Asbury*, 582 F. Supp. 2d at 1333.  Persons over forty years old are within the protected age group. *Faulkner v. Super Valu*

*Stores,* Inc., 3 F.3d 1419, 1425 (10th Cir. 1993).

Plaintiff has presented all the elements of a prima facie case of age discrimination. She is over 40 years old, she was qualified for her position, her employment was terminated, and she was replaced by a younger person.  And, Defendants have proffered an age neutral reason for discharging Plaintiff.  Finally, as with her other claims, Plaintiff has failed to produce evidence that the reason advanced by Defendants for discharging Plaintiff was a pretext for age discrimination.  For example, Plaintiff offers no proof that younger employees were treated more favorably or that older employees were treated less favorably, nor does Plaintiff offer proof of derogatory age comments.  Thus, the Court will grant Defendants' Motion as to Plaintiff's Count IV claim.

IT IS THEREFORE ORDERED that the Motion for Summary Judgment (Doc. No. 49) is granted.

_____

SENIOR UNITED STATES DISTRICT JUDGE